UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-0119

|  |  |
|---|---|
| FRED NEKOUEE, individually, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| vs. | : |
|  | : |
| VILLA SHOPPING CENTER, LLC, a Colorado | : |
| limited liability company; | : |
|  | : |
| Defendant. | : |

_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, VILLA SHOPPING CENTER, LLC, a Colorado limited liability company; sometimes referred to as "Defendant"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant VILLA SHOPPING CENTER, LLC owns the Villa Shopping Center with an address of 2835 28th Street, Boulder, Colorado 80301, in Boulder County ("Villa Shopping Center").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the Villa Shopping Center.   The Defendant's Villa Shopping Center is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      The Villa Shopping Center is a place of public accommodation.

7.      Red Agave, in the Villa Shopping Center, is a place of public accommodation.

8.      Jin Chan Zhang, in the Villa Shopping Center, is a place of public accommodation.

9.      The Asian Seafood Market, in the Villa Shopping Center, is a place of public accommodation.

10.      Defendant is responsible for complying with the obligations of the ADA.

11.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

12.      Mr. Nekouee travels to the Longmont-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

13.      Fred Nekouee has visited the Villa Shopping Center which forms the basis of this lawsuit on October 4, 2018; February 5, 2019; and on October 2, 2019; and he bought goods and sought to avail himself of the goods and services at the Villa Shopping Center on such dates.

14.      Fred Nekouee visited and bought food at the Asian Seafood Market in the Villa

Shopping Center on October 4, 2018 and on October 2, 2019.

15.     Fred Nekouee visited and bought food at Jin Chan Zhang in the Villa Shopping Center on October 4, 2018.

16.     Fred Nekouee visited and bought food and beverages at Red Agave in the Villa Shopping Center on February 5, 2019.

17.     Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018 and again on May 8, 2019.

18.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

19.     Fred Nekouee also visited the Longmont-Boulder area from February 3-7, 2019.

20.     Fred Nekouee plans to return to the Villa Shopping Center to avail himself of the goods and services offered to the public at the Villa Shopping Center, Red Agave, the Asian Seafood Market and Jin Chan Zhang.

21.     The Plaintiff has definite plans to return to the area and to the Villa Shopping Center in March 2020.

22.     The Villa Shopping Center, Red Agave, the Asian Seafood Market and Jin Chan Zhang are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

23.     The Plaintiff likes the food items at the Asian Seafood Market in the Villa Shopping Center.

24.     The Plaintiff likes to bring grocery items back to his hotel room or to eat in his vehicle.

25.     The Plaintiff plans to return to the Asian Seafood Market to buy food.

26.     The Plaintiff likes the food and menus at Jin Chan Zhang and Red Agave.

27.     The Plaintiff plans to return to Jin Chan Zhang and Red Agave in the Villa Shopping Center to eat.

28.     For the reasons set forth in paragraphs 12-27 and 42, Fred Nekouee plans to return to the Villa Shopping Center.

29.     The Plaintiff has encountered architectural barriers at the Villa Shopping Center.

30.     The barriers to access that the Plaintiff encountered at the Villa Shopping Center have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the Villa Shopping Center, and have impaired his use of the restrooms there.

31.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

32.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

33.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

34.     On his visit to Villa Shopping Center, the Plaintiff encountered excessively steep slopes in its parking lot.

35.     The cross slope of the front section (closer to the building) of the access aisle serving the parking spaces for disabled patrons in front of Boulder Pho is steeper than 1:48 and is also steeper than 3.1%.

36.     The cross slope of the walking surface in front of the Asian Food Market is steeper than 1:48 and is also steeper than 3.1%.

37.     The Plaintiff encountered and observed barriers to access in the restroom in the Asian Seafood Market.

38.     The Plaintiff encountered and observed barriers to access in the men's restroom in Jin Chan Zhang.

39.     The Plaintiff encountered and observed barriers to access in the men's restroom in Red Agave.

40.     The Plaintiff is deterred from visiting the Villa Shopping Center even though he enjoys its goods, because of the difficulties he will experience there until the Villa Shopping Center is made accessible to him in a wheelchair.

41.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Villa Shopping Center as described but not necessarily limited to the allegations in paragraph 47 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

42.     Fred Nekouee desires to visit the Villa Shopping Center not only to avail himself of the goods and services available at the Villa Shopping Center but to assure himself that the Villa Shopping Center is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Villa Shopping Center without fear of discrimination.

43.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

44.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26,

1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

45.     Physical conditions that exist at the Villa Shopping Center are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 47 below.

46.     Preliminary inspections of the Villa Shopping Center show that violations of the ADA exist as set forth in paragraph 47 below.

47.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Villa Shopping Center include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, the parking spaces for disabled patrons in front of Boulder Pho and Red Agave do not have upright signage with the International Symbol of Accessibility.   (ii) For these parking spaces, as shown in the photograph below, there are no upright signs with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of upright signage, and it made it difficult for him to find an accessible parking space, and it deters him from visiting the Villa Shopping Center and Red Agave.   (iv) The action required to install upright signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot, there are no parking spaces for disabled patrons with van accessible signage.   (ii) In the parking lot, there are no parking spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting the Villa Shopping Center and made it difficult for him to find an accessible parking space.   (iv) The action required to install signage with the words "van access" is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, the running slope of the front section (closer to the building) of the access aisle serving the disabled parking spaces in front of Boulder Pho is steeper than 1:48 and steeper than 3.1%.   (ii) The running slope of the front section (closer to the building) of this access aisle serving the disabled parking spaces in front of Boulder Pho is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered the running slope

of this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i)   The running slope of the walking surface in front of Panaderia is steeper than 1:20 and it is also steeper than 6%.   (ii) The running slope of the walking surface in front of Panaderia is steeper than the maximum allowed slope of 1:20 and steeper than 6%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered the running slope of this walking surface while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i)   The cross slope of the walking surface in front of Panaderia is steeper than 1:48 and it is also steeper than 3.1%.   (ii) The cross slope of the walking surface in front of Panaderia is steeper than the maximum allowed slope of 1:48 and it is also steeper than 7%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered the cross slope of this walking surface while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

f.   (i)   The cross slope of the walking surface in front of the Asian Seafood Market is steeper than 1:48 and it is also steeper than 3.1%.   (ii) The cross slope of the walking surface in front of the Asian Food Market is steeper than the maximum allowed slope of 1:48 and it is also steeper than 4%, in violation of Federal Law 2010, ADAAG § 403.3.

(iii) The Plaintiff encountered the cross slope of this walking surface while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The slope of the ground surface within 60 inches of the outside of the main entrance door to Red Agave is steeper than 1:48 and is steeper than 3.1%.   (ii) The slope of the ground surface within the required maneuvering space of 60 inches outside of the main entrance door to Red Agave is steeper than the maximum allowed slope of 1:48 and is as steep as about 4%, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) Due to the slope within this maneuvering space outside of the main entrance door to Red Agave, the Plaintiff's wheelchair slipped sideways as he tried to enter Red Agave.   (iv) The action required to reduce the slope of this required maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The slope of the ground surface within 60 inches of the outside of the main entrance door to Jin Chan Zhang is steeper than 1:48 and is steeper than 3.1%.   (ii) The slope of the ground surface within the required maneuvering space of 60 inches outside of the main entrance door to Jin Chan Zhang is steeper than the maximum allowed slope of 1:48 and it is as steep as about 4%, in violation of Federal Law 2010, ADAAG § 404.2.4.4. (iii) Due to the slope within this maneuvering space outside of the main entrance door to Jin Chan Zhang, the Plaintiff's wheelchair slipped sideways as he tried to enter Jin Chan Zhang.   (iv) The action required to reduce the slope of this required maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The slope of the ground surface within 60 inches of the outside of the main

entrance door to the Asian Seafood Market is steeper than 1:48 and is steeper than 3.1%. (ii) The slope of the ground surface within the required maneuvering space of 60 inches outside of the main entrance door to the Asian Seafood Market is steeper than the maximum allowed slope of 1:48 and it is as steep as about 5%, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) Due to the slope within this maneuvering space outside of the main entrance door to the Asian Seafood Market, the Plaintiff's wheelchair slipped sideways as he tried to enter the Asian Seafood Market.   (iv) The action required to reduce the slope of this required maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

**ASIAN SEAFOOD MARKET**

j.   (i) The length of time for the main entrance door to the Asian Seafood Market to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for this entrance door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this entrance door to close, this door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the restroom in the Asian Seafood Market, the door opening to the restroom is less than 32 inches wide.   (ii) The door opening to the restroom in the Asian Seafood Market does not provide a minimum clear width of 32 inches and is only about 23 inches wide, in violation of Federal Law 2010, ADAAG § 404.2.3.   (iii) Due to this narrow door

opening, the Plaintiff required assistance to enter this restroom since it was not wide enough for his wheelchair to pass through this doorway while he was sitting in it.   (iv) The action required to increase the width of this door opening is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) In the Asian Seafood Market restroom, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the sink and is less than 18 inches.   (ii) This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the sink and is less than 18 inches and is only about 10 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance and the narrow door opening, the Plaintiff required assistance to exit this restroom.   (iv) The action required to relocate the sink to increase the door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) In the Asian Seafood Market restroom, the operation of the door knob requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door knob in the restroom requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door knob with a closed fist or loose grip.   (iv) The action required to replace this door knob is easily accomplishable and able to be carried out without much difficulty or expense.

n.    (i) In the Asian Seafood Market restroom, the top of the toilet seat is less than 17 inches above the floor.   (ii) In this restroom, the height of the toilet seat above the finish floor is not between a minimum of 17 inches and a maximum of 19 inches above the finish

floor measured to the top of the seat, as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 604.4.   (iii) Due to the height of this toilet seat above the floor, the Plaintiff required assistance to sit on the toilet and to move off of this toilet.   (iv) The action required to install an ADA compliant toilet is easily accomplishable and able to be carried out without much difficulty or expense.



o.   (i) In the restroom in the Asian Seafood Market, there is no rear wall grab bar or side wall grab bar in the toilet area.   (ii) As shown in the photograph below, this restroom does not have a rear wall or side wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) Due to the lack of grab bars in the restroom, the Plaintiff also required assistance to use the toilet.   (iv)   The action required to install rear and side wall grab bars is easily accomplishable and able to be carried out without much difficulty or expense.



p.   (i) In the restroom in the Asian Seafood Market, the water drain and supply pipes under the sink are not insulated.   (ii) As shown in the photograph below, the water drain and supply pipes under this sink are not insulated or otherwise configured to protect against contact, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation on these pipes under this sink, the Plaintiff risked skin burns and injury to his legs when he used this sink.   (iv) The action required to insulate these pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



q.   (i) In the restroom in the Asian Seafood Market, the operation of the faucet controls for the sink require tight grasping, pinching, or twisting of the wrist.   (ii) The operation of these faucet controls for this sink require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate these faucet controls with a closed fist or loose grip. (iv) The action required to replace these faucet controls is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the restroom in the Asian Seafood Market, the bottom of the paper towel dispenser is higher than 48 inches above the floor.   (ii) The bottom of this paper towel dispenser is higher than 48 inches above the finish floor and is as high as about 56 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in

violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) From his wheelchair, the Plaintiff tried but could not reach a paper towel due to the height of this paper towel dispenser above the floor.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the restroom in the Asian Seafood Market, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and as high as about 46 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. (iii) Due to the height of the bottom edge of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**JIN CHAN ZHANG**

t.   (i) The force needed to open the entrance door to Jin Chan Zhang is greater than 5 pounds.   (ii) The force needed to open the entrance door to Jin Chan Zhang is about 8 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff had difficulty opening this door to enter Jin Chan Zhang.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) The length of time for the entrance door to Jin Chan Zhang to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The

length of time for this entrance door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this door to close, the door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

v.  (i)  The men's restroom in Jin Chan Zhang does not have signage with the International Symbol of Accessibility.   (ii) The men's restroom in Jin Chan Zhang does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed that the men's restroom in Jin Chan Zhang does not have the International Symbol of Accessibility and such lack of signage is a barrier to access since this restroom is not identified as accessible, and this lack of signage deters him from visiting Jin Chan Zhang and the Villa Shopping Center. (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the restroom in Jin Chan Zhang, the door opening to the men's restroom is less than 32 inches wide.   (ii) The door opening to the men's restroom in Jin Chan Zhang does not provide a minimum clear width of 32 inches and is only about 23 inches wide, in violation of Federal Law 2010, ADAAG § 404.2.3.   (iii) Due to this narrow door opening, the Plaintiff required assistance to enter this men's restroom since it was not wide enough for his wheelchair to pass through this doorway.   (iv) The action required to increase the width of this door opening is easily accomplishable and able to be carried out without much difficulty or expense.

x.     (i) In the men's restroom in Jin Chan Zhang, the operation of the door knob requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door knob in the men's restroom requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door knob in the men's restroom with a closed fist or loose grip. (iv) The action required to replace this door knob is easily accomplishable and able to be carried out without much difficulty or expense.

y.     (i) In the men's restroom in Jin Chan Zhang, the water drain and supply pipes under the sink are not insulated.   (ii) The water drain and supply pipes under this sink are not insulated or otherwise configured to protect against contact, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation on these pipes under this sink, the Plaintiff risked skin burns and injury to his legs when he used this sink.   (iv) The action required to insulate these pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

z.     (i) In the men's restroom in Jin Chan Zhang, there is no rear wall grab bar or side wall grab bar in the toilet area.   (ii) As shown in the photograph below, this restroom does not have a rear wall or side wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) Due to the lack of grab bars in the restroom, the Plaintiff also required assistance to use the toilet.   (iv)   The action required to install rear and side wall grab bars is easily accomplishable and able to be carried out without much difficulty or expense.



aa.     (i) In the men's restroom in Jin Chan Zhang, the operation of the faucet controls for the sink require tight grasping, pinching, or twisting of the wrist.   (ii) The operation of these faucet controls for this sink require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate these faucet controls with a closed fist or loose grip.   (iv) The action required to replace these faucet controls is easily accomplishable and able to be carried out without much difficulty or expense.

bb.     (i) In the men's restroom in Jin Chan Zhang, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and as high as about 52 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.

(iii) Due to the height of this mirror's reflecting surface above the finish floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.  (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the men's restroom in Jin Chan Zhang, the centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in Jin Chan Zhang, the bottom of the paper towel dispenser is higher than 48 inches above the floor.   (ii) The bottom of this paper towel dispenser is higher than 48 inches above the finish floor and is as high as about 53 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) From his wheelchair, the Plaintiff tried but could not reach a paper towel due to the height of this paper towel dispenser above the floor.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the men's restroom in Jin Chan Zhang, the distance from the centerline of the toilet to the side wall is not between 16 inches and 18 inches.   (ii) The distance from

the centerline of this toilet to the side wall is not between a minimum of 16 inches and a maximum of 18 inches, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) The Plaintiff observed this condition, and it deters him from visiting Jin Chan Zhang and the Villa Shopping Center, and this condition would make the use of a side wall grab bar very difficult, if this restroom had a side wall grab bar.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

**RED AGAVE**

ff.   (i) The force needed to open the entrance door to the men's restroom in Red Agave is greater than 5 pounds.   (ii) The force needed to open the entrance door to the men's restroom in Red Agave is about 9 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff had difficulty opening this door to enter the men's restroom in Red Agave.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the men's restroom in Red Agave, a door pull is not provided on both sides of the door to the toilet compartment near the latch.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on the door to the accessible toilet compartment, the Plaintiff could not fully close the door when he used the toilet.   (iv) The action required to install door pulls on both sides of the door to the accessible toilet

compartment is easily accomplishable and able to be carried out without much difficulty or expense.

hh.    (i) In the men's restroom in Red Agave, the width of the accessible toilet compartment is less than 60 inches.   (ii) The width of this accessible toilet compartment is less than the minimum required width of 60 inches and is only about 49 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the lack of width in this accessible toilet compartment, the Plaintiff required assistance to maneuver his wheelchair so that he could use the toilet.   (iv) The action required to move the side panel of this accessible toilet compartment to increase the width of this compartment is easily accomplishable and able to be carried out without much difficulty or expense.

ii.    (i) In the men's restroom in Red Agave, the side wall grab bar is less than 42 inches long.   (ii) In the men's restroom in Red Agave, the side wall grab bar is less than 42 inches long and is only about 38 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the short length of this side wall grab bar, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

jj.    (i) In the men's restroom in Red Agave, the side wall grab bar extends less than 54 inches from the rear wall.   (ii) In the men's restroom in Red Agave, the side wall grab bar does not extend a minimum of 54 inches from the rear wall and only extends about 48 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of adequate extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv)

The action required to install a side wall grab bar in the proper position is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the men's restroom in Red Agave, there is no clear floor space under the sinks.   (ii) In the men's restroom in Red Agave, there is no clear floor or ground space under the sinks as shown in the photograph below, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3.   (iii) Due to the lack of clear floor space under these sinks, the Plaintiff could not make a front approach in his wheelchair to these sinks to wash his hands.   (iv) The action required to replace these sinks or the cabinetry under them is easily accomplishable and able to be carried out without much difficulty or expense.



ll.   (i) In the men's restroom in Red Agave, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is about 60 inches above the finish floor, and outside of the reach range of an individual in a

wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and he could not reach it to hang up his jacket, and it deters him from visiting Red Agave.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

mm.        (i) In the men's restroom in Red Agave, the centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.  (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

48.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

49.     The discriminatory violations described in paragraph 47 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

50.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the

Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

51.    Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

52.    Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

53.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

54.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

55.    Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have

existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's places of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

56.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

57.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Villa Shopping Center, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and

usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when

such modifications are necessary to afford all offered goods, services, facilities, privileges,

advantages or accommodations to individuals with disabilities; and to take such steps that

may be necessary to ensure that no individual with a disability is excluded, denied services,

segregated or otherwise treated differently than other individuals because of the absence of

auxiliary aids and services.

      c.      An award of attorney's fees, costs and litigation expenses pursuant to 42

U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.      Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*